UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

CONGREGATION 3401 PRAIRIE BAIS YESHAYA D'KERESTIR, INC., and RABBI ARIE WOHL,

Plaintiffs,

vs.

CITY OF MIAMI BEACH, a municipal corporation,

Defendant.

_______________________________________/

**COMPLAINT**

Plaintiffs, Congregation 3401 Prairie Bais Yeshaya D'Kerestir, Inc. ("3401 Prairie") and Rabbi Arie Wohl (collectively, 3401 Prairie and Rabbi Wohl will be referred to as "Plaintiffs"), by and through undersigned counsel, hereby sue Defendant, City of Miami Beach (the "City"), and allege as follows:

**Introduction**

1. The City has just ***banned private prayer inside a private residence***.

2. Arbitrary and discriminatory enforcement results from delegating too much authority to those charged with enforcing a law when the law is vague or provides no objective criteria to guide its lawful application. *See Konikov v. Orange County, Fla.,* 410 F.3d 1317, 1329 (11th Cir. 2005). When that vague law or regulation implicates First Amendment-protected freedoms, it can chill the exercise of those fundamental freedoms. *See id.*

3. In particular, "[a] zoning ordinance that touches upon activities protected by the First Amendment *must* . . . contain 'narrow, objective, and definite standards' to guide city officials

in their review." *See Hollywood Community Synagogue, Inc. v. City of Hollywood, Florida,* 436 F. Supp.2d 1325, 1335 (S.D. Fla. 2006) (emphasis added). "Absent such standards, the ordinance grants '***unbridled discretion***' to city officials and fails to 'prevent the official from encouraging some views and discouraging others.'" *Id.* (emphasis added). That is *exactly* what has happened here.

4. Plaintiffs own and/or reside in a private home located in Miami Beach, Florida. As is their constitutionally-guaranteed right under the Free Exercise Clause of the First Amendment, Plaintiffs gather with their friends and family for ***private*** prayer in their own private residence.

5. In this lawsuit, Plaintiffs seek relief from the City's exercise of "unbridled discretion" in ordering that private prayer must stop. Plaintiffs have been subjected to a code enforcement process that was intended from the outset to justify the eventual finding of a violation and to shut down the private prayer sessions, through an ever-evolving and shifting series of allegations and unwritten criteria that exists *nowhere* in the Code. The result is a City-issued Order and City-issued injunction finding that the number of persons "assembling" or "gathering" at or near (but, quite notably, not ***in***) Plaintiffs' private residence is not a "compatible" accessory use of a residential property.

6. Furthermore, because the City-issued injunction enjoins Plaintiffs from "all uses," its sweeps endless possibilities of conduct within its reach. And, because the Order also authorizes the City to take "any and necessary steps to ensure compliance," the City-issued injunction is a tool for continued abuse and harassment of Plaintiffs.

7. The City is wrongfully discriminating against Plaintiffs' First Amendment-protected rights of religious exercise and assembly through discriminatory and arbitrary enforcement of the City's zoning ordinances, unmoored from any objective criteria or standards,

which deprives and/or substantially burdens Plaintiffs the most sacred and constitutionally-protected right to privately gather with friends and family for private prayer in a private residence.

8. Plaintiffs seek injunctive relief under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"), as well as compensatory damages under state law.

**Parties**

9. Plaintiff, 3401 Prairie, is the owner in fee simple of certain real property located at 3401 Prairie Ave., Miami Beach (the "Property").

10. Plaintiff, Rabbi Wohl, is an individual who currently, and at all times material to the allegations of this Complaint, resides at the Property.

**Jurisdiction and Venue**

11. This Court has jurisdiction over all federal claims arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 & 1343(a). This Court has supplemental jurisdiction over the pendent state law claim pursuant to 28 U.S.C. § 1367(a).

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as Defendant and both Plaintiffs are located in this District, and all events giving rise to this action occurred in this District.

**Relevant City Code**

13. The Property is located in the RS-4 single family residential district in the City.

14. Pursuant to Section 142-102 of the City Code, the "main permitted uses" in the RS-4 single family residential district are "single family detached dwellings."

15. Section 142-109(d)(6) of the City Code expressly recognizes:

> peoples' rights of assembly, free expression, religious freedom, and other rights provided by the state and federal constitutions. It is the intent of the city commission

> that no decision under this section shall constitute an illegal violation of such rights, and this section shall not be construed as such a violation.

16. Section 114-1 of the City Code defines a "Religious Institution" as follows:

> . . . a use where an establishment, organization or association conducts religious prayer or activity that is open to members and/or the general public, and may be accompanied by accessory uses customarily associated with religious institutions such as, but not limited to, education classes, youth centers, day care, offices, and rooms for licensed catering of life cycle or other gatherings or celebrations (e.g., weddings, confirmations, and coming-of-age events).

However, the definition explicitly allows, as it must, for ***private prayer within a private residence***:

> ***A group privately assembling for worship, prayer or religious service in a private home or dwelling in which at least one member of the group resides, is not a religious institution***, even if life cycle rituals are included in the service, including weddings, confirmations, and coming-of-age (such as bar or bat-mitzvah) observances and meals accompany the service.

City Code § 114-1 (emphasis added).

17. Section 114-4(3) states that "[n]o building shall be erected, converted, enlarged, reconstructed, moved, or structurally altered, ***nor shall any building or part thereof, be used except for a use permitted in the district in which the building is located***." (emphasis added).

18. Under Section 30-73 of the City Code, the City's Special Magistrate has the power to "[i]ssue orders having the force of law commanding whatever steps are necessary to bring a violation into compliance" and "[a]ssess and order the payment of civil penalties."

## General Allegations

### *The Property*

19. On February 4, 2020, 3401 Prairie purchased the Property. The Property consists of approximately 10,000 square feet of living space, of which approximately 800 square feet are used for private prayer.

20. The City does ***not*** claim that the primary use of the Property violates the City's Code.

21. The City does ***not*** claim that the primary use of the Property is for anything other than residential use.

22. The City does ***not*** claim that the primary use of the Property violates any law, rule, or regulation.

23. *Prior* to the purchase of the Property by 3401 Prairie, Jewish Educational Leadership Institute, Inc. (hereafter the "Previous Owner"), owned the Property from 2012 through February 3, 2020. During that time, the Previous Owner allegedly operated a school, a dormitory, and a retail gift shop on the Property in violation of the City Code.

24. As part of its due diligence for the purchase of the Property, 3401 Prairie met with City officials on two separate occasions. 3401 Prairie met twice with both Mayor Gelber and Michelle Burger, the Mayor's assistant. At one of those meetings, Assistant City Attorney Steve Rothstein was also present. These City officials assured 3401 Prairie that the City Code "allows for group prayer in the single-family residential district," *i.e.,* the RS-4 zoning district in which the Property is located. These City officials further informed 3401 Prairie that "you can pray ten times a day . . . just get the other guy out," referring to the Previous Owner.

25. On reasonable reliance of the City officials' representations and assurances, 3401 Prairie purchased the Property.

***Private Prayer on the Property***

26. Since 3401 Prairie's purchase, the Property has been and is currently being used by the owner and its full-time resident lawfully as a single-family residence. At all times material to this Complaint, Rabbi Wohl resides at the Property.

27. The general public is not allowed in or on the Property. Just like every other home, only Rabbi Wohl's and the owner's invited guests and friends are permitted on the Property.

28. Orthodox Jews, specifically men, are commanded to pray three times per day, within specific periods of the day. Jewish prayer and worship in the Orthodox Movement is inherently and necessarily a communal experience, requiring the presence of at least ten (10) adult Jewish males (over the age of 13). This is called a "minyan," translated literally from the Hebrew as a "counting."

29. In accordance with their Jewish faith, Rabbi Wohl and the owner of the Property utilize the home for daily minyan, which is not open to the public.

***The Notice of Violation***

30. On April 12, 2021, the City's Code Compliance Department issued a Notice of Violation ("NOV") under Section 114-4(3) of the City Code for purportedly "[e]recting, converting, enlarging, reconstructing, moving, or structuring or by using a building or part thereof for a use not permitted in the district in which the building is located." (A true and correct copy of the NOV is attached hereto as **EXHIBIT "A"**). As part of the NOV, the City's Planning Director provided a certified letter stating that "Religious Institutions and any other non-single family residential uses are prohibited in the RS-4 district." (*Id.).*

***The Hearing***

31. An initial hearing on the NOV was conducted on January 31, 2022, by the City's Chief Special Magistrate. At that hearing, the City did not argue that 3401 Prairie was impermissibly operating as a "Religious Institution" – the alleged basis for the violation identified in the City's Planning Director certified letter – but instead, vaguely alleged that "commercial use" on the Property was purportedly ongoing due to a so-called "large" number of people seen in the area. The City, however, failed to identify with any particularity how many people were purportedly on or in the Property at any given time, or offer any legal basis to conclude that the

number of people was not a lawful private assembly or gathering (such as a Cub Scout meeting or private party), but was "commercial" and therefore, unlawful.

32. A second hearing was conducted on March 25, 2022, by the Special Magistrate. At the March 25th Hearing, the City called two witnesses in its case-in-chief: (1) an administrator with the City's Code Compliance Department and (2) a Code Compliance Officer. At no point during the March 25th Hearing did the Code Officials offer evidence, nor did the City offer any argument, that the Property is being used as a "Religious Institution."

33. Instead, the Code Officials' testimony consisted entirely of allegations that the Property was being used for "commercial uses" and, in purported support thereof, the City introduced screenshots taken from a curiously-positioned and recently-installed surveillance video camera, which captured video during the week of the widely-observed Jewish holiday of Passover between March 27, 2021, and April 3, 2021. The City argued that between 51 and 104 people allegedly were seen near the Property during the course of each ***24-hour period*** between March 27, 2021, and April 3, 2021, and the screenshots purportedly supported these allegations.

34. But, the screenshots did ***not*** support these allegations. At most, the screenshots merely showed small groups of between one and five individuals walking on the public right-of-way along Prairie Avenue and 34th Street. Indeed, during cross examination, the City's Code Administrator admitted that ***not a single picture in her surveillance file showed anyone actually entering the Property***.

35. The City failed to preserve the actual video from which the screenshots were purportedly taken.

36. The video no longer exists.

37. The City destroyed or permitted the video to be destroyed.

38. By the City's own admission, the screenshots were mostly photos of unknown individuals walking around the area on public spaces, on either the sidewalk or in the street, all of whom could have easily been walking to their own home or someone else's home, or any of the eleven synagogues in the area.

39. Moreover, the screenshots failed to show any people actually gathering or assembling ***inside*** the home.

40. Although the City's Code does not define "commercial use" in terms of people surrounding an area or structure (which is quite logical, as people may surround an area, a structure, or even a single-family residence for a myriad of reasons having nothing to do with commercial use), the City argued the Property is being used for a "commercial use" merely due to high pedestrian activity and vehicular traffic around the home.

41. The City's Code does ***not*** define what "high pedestrian activity" means.

42. The City's Code does ***not*** define what "high vehicular traffic" means.

43. Aside from the fact that the City Code provides no such standard based on a number of people or vehicles, 3401 Prairie offered uncontroverted testimony that further debunked the City's argument.

44. At the March 25, 2022 Hearing, witnesses for 3401 Prairie testified that the general public is not allowed on the Property and that only Rabbi Wohl's and the owner's invited guests and friends are permitted on the Property. 3401 Prairie's witnesses also offered uncontroverted testimony that there are eleven synagogues within a five-minute walk of the Property and that there is, therefore, a considerable amount of pedestrian traffic in the neighborhood resulting from people walking to those synagogues, having nothing to do with 3401 Prairie. As such, the vast majority of Orthodox Jewish pedestrians seen in the screenshots proffered by the City were walking to any

one of these eleven synagogues, as is commonplace in Orthodox Jewish communities, especially on the Sabbath and Jewish holidays, or to their home or someone else's home.

45. At the March 25th Hearing, the City also admitted that the screenshots did not show any commercial activity or prohibited activity of any kind. Specifically, under cross examination, the City's Code Compliance Officer admitted that she did not have any evidence whatsoever of any "commercial use" on the Property.

46. The Special Magistrate stated on the record at the March 25th Hearing that he found no evidence of a "commercial use."

47. At the conclusion of the March 25th Hearing, the Special Magistrate deferred ruling and asked the City and 3401 Prairie to submit memorandum of law on the question of whether or not the purported "gatherings and assemblies" at the Property were "in excess of what is expected in a RS-4 District." In response, the City submitted a memorandum of law which acknowledged that the City Code does not define what a "gathering" or "assembly" is, but argued nonetheless that the use or occupancy of a building or structure in excess of 50 people (irrespective of whether the excess of 50 people happens at the same time or over a 24-hour period) on a regular or re-occurring basis constitutes a gathering or assembly as defined within the Florida Building Code (but without citing a specific provision). While purportedly defining a "gathering" or "assembly," the Florida Building Code, even *if* appliable, does not indicate whether such a gathering or assembly of 50 or more people is unlawful or "incompatible" with a single-family residential use. And, as previously alleged, the City itself has <u>not</u> provided any evidence that 50 or more people were *inside* the Property at any time.

***The Special Magistrate's Unlawful Order***

48. On April 6, 2022, the Special Magistrate entered an "Order on Notice of Violation of Section 114-4(3) of the Miami Beach Code of Laws and Ordinances" (hereafter, the "Order"), a true and correct copy of which is attached hereto as **EXHIBIT "B."** In the Order, the Special Magistrate found, *inter alia,* by "clear and convincing evidence" that "[t]he number of persons attending the assemblies or gatherings observed at the Property, as well as their frequency are not a ***compatible*** accessory use of a residential property." (emphasis added). The Order further found that "said assemblies or gatherings have an adverse impact on the neighborhood, their frequency is excessive, and this scenario is likely to continue to occur on a regular basis." And, the Order determined that "[s]aid assemblies or gatherings are in violation of section 114-4(3) because they constitute the 'using of a building or part thereof for a use not permitted in the district in which the building is located."

49. The Special Magistrate then ordered 3401 Prairie to "cease and desist from ***all*** uses of the Property which are prohibited in the RS-4 district effective immediately" and expressly authorized the City "to take any and all necessary steps to ensure compliance with this order."

50. Most critically for purposes of this Complaint:

a) the Order does ***not*** define the term "compatible":

b) the Order does ***not*** specifically identify any portion of the City Code defining what is a "compatible" accessory use of a residential property or cite to any objective criteria the Special Magistrate used for determining that Plaintiffs' accessory use at the Property was not "compatible";

c) the Order does ***not*** identify a threshold number of persons gathered together at the same time that would convert a purportedly "compatible" accessory use of the Property into an "incompatible" use;

d) the Order does ***not*** identify a threshold number of persons gathered together over a 24-hour period of time that would convert a purportedly "compatible" accessory use of the Property into an "incompatible" use; and

e) the Order does ***not*** identify with particularity the alleged "adverse impacts" Plaintiffs' private prayer allegedly has or has had on the neighborhood.

51. All conditions precedent to the commencement and prosecution of this action have taken place, have been performed, or have otherwise been waived or excused.

**Count I**
**Violation of the United States Constitution: First and Fourteenth Amendments**
**42 U.S.C. § 1983**

52. Plaintiffs repeat and incorporate by reference paragraphs 1 through 51 as if fully set forth herein.

53. Pursuant to 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

54. The Special Magistrate's Order is a final decision of the City. The Order is attributable to the City because the decision is not subject to meaningful administrative review. Pursuant to Section 30-77 of the City Code, the only avenue for appeal of the Special Magistrate's

decision is by writ of certiorari to the Circuit Court, which is, in itself, not necessarily a meaningful review given the standard of review. As expressly set forth in the City's Code, such an appeal shall ***not*** be a hearing de novo.

55. The arbitrary and discriminatory treatment by the City's code enforcement department is also attributable to the City. All actions taken by the code enforcement officers against Plaintiffs were performed when they were acting in their official capacities.

56. Plaintiffs have constitutionally protected rights under the First Amendment to assemble and gather with friends and family for private prayer in a private residence.

57. In accordance with their Orthodox Jewish faith, Rabbi Wohl and the owner gather for daily prayer service called a "minyan," which requires the presence of *at least ten* adult Jewish males. The general public is not allowed on the Property. Only Rabbi Wohl's and the owner's invited guests and friends are permitted on the Property.

58. The City-issued Order finding that number of persons attending assemblies or gatherings at the Property, and their frequency, is not a "compatible" accessory use of a residential property is arbitrary, capricious, and discriminatory. The City's Special Magistrate never articulated in his Order, nor does the City's Code expressly provide, a particular number of persons attending a private assembly or gathering that would be considered either "compatible" or "incompatible" by which Plaintiffs' use of the property may be measured or which would legally support the Special Magistrate's decision. Likewise, the City's Special Magistrate did not specifically identify any alleged "adverse impacts" on the neighborhood, other than the implicit suggestion that Plaintiffs' private prayer is "adverse."

59. In addition, that portion of the Order enjoining Plaintiffs from "all uses of the property which are prohibited" sweeps endless possibilities of constitutionally-protected conduct

within its reach, and may lead to arbitrary abuse and harassment by the City's code enforcement and police departments.

60. The City's Order violates Plaintiffs' constitutional rights of free speech, free exercise of religion, and to freely assemble, as guaranteed by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment.

61. The City's Order deprives Plaintiffs of their substantive due process rights, as guaranteed by the Fourteenth Amendment to the United States Constitution, as the Order was an arbitrary, capricious, and unreasonable act not based upon any objective criteria or standards found in the City Code or in the law.

62. Plaintiffs are entitled to preliminary and permanent injunctive relief against the City to enjoin the Order, any and all actions by the City to ensure compliance with the Order, and to order that all efforts, including further code compliance enforcement regarding Plaintiffs' private prayer, be enjoined.

63. Plaintiffs will suffer irreparable harm if the requested preliminary and permanent injunctive relief is not granted as City's Order deprives Plaintiffs of their constitutionally-guaranteed rights of free speech, free exercise of religion, and to freely assemble, including, but not limited to, the right to gather to freely worship in their private residence.

64. The deprivation of Plaintiffs' constitutionally-protected rights to gather to freely worship in their private residence outweighs any harm the requested preliminary and permanent injunction relief may cause to the City. Indeed, the City's "finding" that Plaintiffs' private prayer allegedly has an "adverse impact" on the neighborhood is unsupported by specific facts, reference to the record, or examples.

65. The protection of the First Amendment rights of free speech, free exercise of religion, and to freely assemble are in the public interest.

66. In cases involving Section 1983 claims, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b).

**WHEREFORE**, Plaintiffs respectfully request entry of judgment against the City as follows:

a) finding the City-issued Order unconstitutional in violation of Plaintiffs' constitutional rights of free speech, free exercise of religion, and to freely assemble, as guaranteed by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment;

b) finding the City-issued Order unconstitutional in violation of Plaintiffs substantive due process rights, as guaranteed by the Fourteenth Amendment to the United States Constitution;

c) enjoining enforcement of the City-issued Order and, specifically, enjoining the City and its Special Magistrate, code enforcement and police department, from enforcing the Order;

d) enjoining the City and its Special Magistrate, code enforcement and police department, from any future efforts to find or hold Plaintiffs liable for failure to comply or to otherwise adjudicate noncompliance with the NOV;

e) enjoining the City and its Special Magistrate, code enforcement and police department, from any future efforts to find or hold Plaintiffs in violation of the City Code for private prayer in the private residence;

f) awarding Plaintiffs special damages, including wrongful act damages;

g) awarding Plaintiffs their cost and reasonable attorneys' fees; and

h) all such other and further relief as this Court deems just and proper.

**Count II**
**Violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"); Discrimination on the Basis of Religion**
**42 U.S.C. § 2000cc(a)(1) – Substantial Burden**

67. Plaintiffs repeat and incorporate by reference paragraphs 1 through 51 as if fully set forth herein.

68. Pursuant to 42 U.S.C. § 2000cc(a)(1), "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly or institution . . .

a. is in furtherance of a compelling government interest; and

b. is the least restrictive means of furthering that compelling government interest."

69. The City-issued Order substantially burdens Plaintiffs' First Amendment-protected freedoms of speech, religion, and assembly solely because the Special Magistrate wishes to discourage the nature of Plaintiffs' private, religious use of their own property. Furthermore, that portion of the Order that vaguely enjoins Plaintiffs from all "prohibited uses" without identifying the precise "uses" that are being restrained substantially burdens Plaintiffs' First Amendment-protected freedoms of speech, religion, and assembly because it is hopelessly vague, sweeping endless possibilities of constitutionally-protected conduct within its reach, which may be used as a tool for abuse and harassment.

70. In the Order, the City's Special Magistrate did not specifically identify any alleged "adverse impacts" that Plaintiffs' private prayer is having or has had on the neighborhood. The

Order, therefore, fails on its face to identify any compelling government interest that would justify the imposition of the substantial burden the City-issued Order places on Plaintiffs' constitutionally-protected freedoms of speech, religion, and assembly.

71. The City's Order, which seeks to preclude Plaintiffs from pursuing their constitutionally-protected rights to gather with friends and family to privately pray in their own private residence, is not and cannot be the least restrictive means to further the City's unarticulated compelling interest, assuming there even *is* a legitimate, non-discriminatory interest. Furthermore, that portion of the Order that vaguely enjoins Plaintiffs from all "prohibited uses" without identifying the precise "uses" that are being restrained, sweeps endless possibilities of constitutionally-protected conduct within its reach, and may lead to arbitrary abuse and harassment by the City's code enforcement and police departments.

72. Plaintiffs are entitled to preliminary and permanent injunctive relief against the City to enjoin the Order, any and all actions by the City to ensure compliance with the Order, and to order that all efforts, including further code compliance enforcement regarding Plaintiffs' private prayer, be enjoined.

73. Plaintiffs will suffer irreparable harm if the requested preliminary and permanent injunctive relief is not granted as City's Order deprives Plaintiffs of their constitutionally-guaranteed rights of free speech, free exercise of religion, and to freely assemble, including, but not limited to, the right to gather to freely worship in their private residence.

74. The deprivation of Plaintiffs' constitutionally-protected rights to gather to freely worship in their private residence outweighs any harm the requested preliminary and permanent injunction relief any cause to the City. Indeed, the City's "finding" that Plaintiffs' private prayer

allegedly has an "adverse impact" on the neighborhood is unsupported by specific facts, reference to the record, or examples.

75. The protection of the First Amendment rights of free speech, free exercise of religion, and to freely assemble are in the public interest.

76. For claims brought under RLUIPA, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b).

**WHEREFORE**, Plaintiffs respectfully request entry of judgment against the City as follows:

a) finding the City-issued Order unconstitutional in violation of Plaintiffs' constitutional rights of free speech, free exercise of religion, and to freely assemble, as guaranteed by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment;

b) finding the City-issued Order unconstitutional in violation of Plaintiffs' substantive due process rights, as guaranteed by the Fourteenth Amendment to the United States Constitution

c) enjoining enforcement of the Order and, specifically, enjoining the City and its Special Magistrate, code enforcement and police department, from enforcing the Order;

d) enjoining the City and its Special Magistrate, code enforcement and police department, from any future efforts to find or hold Plaintiffs liable for failure to comply or to otherwise adjudicate noncompliance with the NOV;

e) enjoining the City and its Special Magistrate, code enforcement and police department, from any future efforts to find or hold Plaintiffs in violation of the City Code for private prayer in the private residence;

f) awarding Plaintiffs special damages, including wrongful act damages;

g) awarding Plaintiffs their cost and reasonable attorneys' fees; and

h) all such other and further relief as this Court deems just and proper.

**Count III**
**Promissory Estoppel**
**(for Damages)**

77. Plaintiffs repeat and incorporate by reference paragraphs 1 through 51 as if fully set forth herein.

78. The City knew, or should have known, that 3401 Prairie would rely to its detriment on the representations and assurances of City officials that the City Code "allows for group prayer in the single-family residential district," *i.e.,* the RS-4 zoning district in which the Property is located.

79. 3401 Prairie changed its position in reliance on the representations and assurances of City officials by expending sums of money to purchase the Property and to make repairs and renovations.

80. As a consequence of the 3401 Prairie reliance on the representations and assurances of City officials, 3401 Prairie has suffered damages in excess of approximately $1,000,000.00.

**WHEREFORE**, 3041 Prairie respectfully requests entry of judgment in its favor and against the City for damages, special damages, including wrongful act damages, together with costs and such other and further relief as this Court deems just and proper.

**Demand for Jury Trial**

Plaintiffs hereby demand a Trial by Jury on All Issues So Triable.

Dated: April 19, 2022

Respectfully submitted,

**SAUL EWING ARNSTEIN & LEHR LLP**
200 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Tel: 954.713.7600
Email: franklin.zemel@saul.com
Email: alan.poppe@saul.com
Email: ariel.deray@saul.com
Secondary Email: karen.garcia@saul.com

By: /s/: Franklin L. Zemel
Franklin L. Zemel
Florida Bar No. 816620
Alan R. Poppe
Florida Bar No. 0186872
Ariel R. Deray
Florida Bar No. 118163

***Attorneys for Plaintiffs Congregation 3401 Prairie Bais Yeshaya D'Kerestir, Inc. and Rabbi Arie Wohl***