## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-21213-CIV-ALTONAGA/Torres

CONGREGATION 3401 PRAIRIE
BAIS YESHAYA D'KERESTIR,
INC.,

      Plaintiff,

v.

CITY OF MIAMI BEACH,

      Defendant.

_____/

### <u>ORDER</u>

**THIS CAUSE** came before the Court upon the parties' cross motions for summary judgment. On March 20, 2023, Plaintiff Congregation 3401 Prairie Bais Yeshaya D'Kerestir, Inc. filed a Motion for Summary Judgment [ECF No. 127], along with its supporting Statement of Material Facts ("Plaintiff's SOF") [ECF No. 129]. The same day, Defendant City of Miami Beach ("Defendant" or the "City") filed a Motion for Summary Judgment [ECF No. 134] and supporting Statement of Material Facts ("Defendant's SOF") [ECF No. 133]. On April 3, 2023, the parties filed their Responses to the Motions and Statements of Material Facts [ECF Nos. 150–53], to which they also filed Replies [ECF Nos. 159 & 161]. After thorough review of the parties' written submissions, the record, and applicable law, the Motions are granted in part and denied in part.

### I. BACKGROUND

Plaintiff's Amended Complaint [ECF No. 9] asserts two claims against Defendant requesting damages and injunctive relief under 28 U.S.C. section 1983 for alleged violations of the First and Fourteenth Amendments. (*See* Am. Compl. ¶¶ 92–113; *see also* Oct. 6, 2022 Order [ECF No. 48] (allowing Counts I and II of the Amended Complaint to remain)). In addition,

Defendant asserts a counterclaim seeking a declaratory judgment that Plaintiff is operating a religious institution in violation of the City Code. (*See* Am. Answer [ECF No. 68] 30–32; *see also* Mar. 7, 2023 Order [ECF No. 118] (dismissing Defendant's second counterclaim)).[1]

Plaintiff, a non-profit corporation organized for religious purposes, owns a single-family home (the "Property") in a neighborhood of Miami Beach designated as an "RS-4 single family residential district[.]" (Am. Compl. ¶¶ 16, 20–21 (alteration added); *see* Am. Answer, Ex. 3, Articles of Incorporation [ECF No. 68-3]). The Property has long been associated with the Orthodox Jewish Kerestir community, which honors Rabbi Yeshaya Steiner. (*See* Pl.'s SOF, Ex. 1, Brechner Decl. [ECF No. 129-1] ¶ 4); *Grosz v. City of Miami Beach*, 721 F.2d 729, 731 (11th Cir. 1983). Plaintiff's officers and directors are part of this community. (*See* Pl.'s SOF ¶ 3). According to Plaintiff, it uses the Property for daily "minyan," an Orthodox Jewish prayer service. (*See* Pl.'s SOF ¶¶ 4–8; Am. Compl. ¶¶ 41, 97).

The City Code prohibits the operation of religious institutions in the RS-4 residential district but does not restrict private prayer in the home. *See* Miami Beach, FL, Code § 114-1 (providing definition of "religious institution"); *id.* §§ 142-102–142-104 (listing permitted uses in RS-4 district); *id.* § 114-4(3) (prohibiting any uses not explicitly permitted). Specifically, the City Code defines the term "religious institution" as follows:

> *Religious institution* means a use where an establishment, organization or association conducts religious prayer or activity that is open to members and/or the general public, and may be accompanied by accessory uses customarily associated with religious institutions such as, but not limited to, education classes, youth centers, day care, offices, and rooms for licensed catering of life cycle or other gatherings or celebrations (e.g., weddings, confirmations, and coming-of-age events). A group privately assembling for worship, prayer or religious service in a private home or dwelling in which at least one member of the group resides, is not a religious institution, even if life cycle rituals are included in the service, including

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

weddings, confirmations, and coming-of-age (such as bar or bat-mitzvah) observances and meals accompany the service.

*Id.* § 114-1.

Previous owners of the Property illegally used the residence as a religious institution — including as "a school, a dormitory, and a retail gift shop" — and were subject to code enforcement activities by the City.  (Am. Compl. ¶ 35; *see also* Pl.'s SOF ¶ 9; Def.'s SOF ¶¶ 6–15).  Aware of these previous violations, Plaintiff claims it met with City officials before purchasing the Property to discuss converting the Property to residential use.  (*See* Am. Compl. ¶ 36; Brechner Decl. ¶¶ 12–13; *but see* Def.'s Resp. to Pl.'s SOF ¶ 14 (explaining no discovery was produced with regard to these alleged meetings)).

Following Plaintiff's purchase of the Property, the City conducted a variety of code inspections and other enforcement proceedings.  (*See generally* Pl.'s SOF, Ex. 12, Code Violations [ECF No. 129-12]).  Notably, code enforcement officials visited the Property over 60 times in order to enforce the City's COVID-19 "Safer at Home" policy.  (*See id.* 4–8).  Defendant also installed a video camera to monitor the Property and issued various building code and landscape violations.  (*See generally id.*; *see* Pl.'s SOF, Ex. 15, Def.'s Resps. and Objs. to Pl.'s First Set of Interrogs. [ECF No. 129-15] 8; Def.'s SOF ¶¶ 64–66).

On April 12, 2021, the City's Code Compliance Department issued Plaintiff a Notice of Code Violation ("NOV") for "using a building or a part thereof for a use not permitted in the district in which the building is located."  (Pl.'s SOF, Ex. 17, NOV [ECF No. 129-17] 2).  While the NOV did not specify the nature of the violation (*see generally id.*), an accompanying letter from the City's Planning Director, Thomas R. Mooney, stated that "Religious Institutions are prohibited in the RS-4 district" (Pl.'s SOF, Ex. 19, Letter from Mooney [ECF No. 129-19] 2).

The City's Special Magistrate conducted a hearing on the NOV and issued an order on

April 6, 2022 finding by "clear and convincing evidence" that "[t]he number of persons attending the assemblies or gatherings observed at the Property, as well as their frequency are not a compatible accessory use of a residential property[.]" (Pl.'s SOF, Ex. 25, Order on NOV [ECF No. 129-25] 3 (alterations added)). Following Plaintiff's filing of the instant suit, the City submitted a petition for rehearing arguing the Special Magistrate's interpretation of the City Code was "erroneous[,]" and the Special Magistrate vacated the order. (Pl.'s SOF, Ex. 26, Pet. for Reh'g [ECF No. 129-26] 2; *see* Pl.'s SOF, Ex. 27, Order on Reh'g [ECF No. 129-27] 2).

According to Plaintiff, City officials orchestrated the various code enforcement proceedings to "unlawfully limit *how* and *when* [Plaintiff] could privately gather in its home to worship[.]" (Pl.'s Mot. 1 (alterations added; emphasis in original)). Plaintiff proffers evidence and expert testimony to support its position that it is not operating a synagogue on the Property, but merely engaging in private prayer with guests consisting of individuals who reside at the Property. (*See generally* Pl.'s SOF, Ex. 2, Chernov Rebuttal Report [ECF No. 129-2]; *see also* Brechner Decl. ¶¶ 8–10; Pl.'s SOF, Ex. 4, Reich Dep. [ECF No. 129-4] 134:8–135:9; Pl.'s SOF, Ex. 5, Goodfriend Dep. [ECF No. 129-5] 103:22–105:9). Plaintiff also points to numerous e-mails between City officials discussing and directing code enforcement activity toward the Property; as well as testimony that Defendant proceeded with the NOV without inspecting the Property, speaking to Plaintiff, or speaking to Plaintiff's "invited guests[.]" (Pl.'s SOF ¶ 34 (alteration added; citing *id.*, Ex. 8, Mooney Dep. [ECF No. 129-8] 24:16–25); *see* Pl.'s SOF, Ex. 18, Negron Dep. [ECF No. 18] 42:11–55:12; *see, e.g.*, Pl.'s SOF, Ex. 13, Composite M [ECF No. 129-13]).

According to Defendant, Plaintiff is affiliated with the Property's previous owners and continues to use the Property as a religious institution. (*See* Def.'s SOF ¶¶ 8–11, 16–19 (explaining the overlap in officers of a previous entity that leased the Property for religious institutional use

and citing testimony that these officers fundraised to "prevent the shul's conversion into a residential property" (quotation marks and citations omitted))).  Defendant offers its own expert witness to support its position that Plaintiff is operating a synagogue and submits testimony and other evidence that religious services are open to many of Plaintiff's members — if not the general public — in contravention of the City Code.  (*See* Pl.'s SOF, Ex. 3, Hoffman Expert Report [ECF No. 129-3]; *see, e.g.*, Def.'s SOF, Ex. 1, Mooney Decl. [ECF No. 133-1] ¶ 32; Reich Dep. 113:16–23).  Defendant also points to testimony and neighbor complaints in support of its argument that all its code enforcement activity was mostly unobtrusive, legitimate, and not motivated by animus toward Plaintiff.  (*See* Def.'s SOF ¶¶ 46–66 (citing Mooney Decl.; Brechner Dep. 256:5–257:15); *see, e.g.*, Mooney Decl. 47, 264, 839–40 (attaching neighbor complaints)).

As stated, the parties now move for summary judgment on all remaining counts of the Amended Complaint and Defendant's counterclaim on the basis that the material facts are undisputed.  (*See generally* Pl.'s Mot; Def.'s Mot.).

## II.  LEGAL STANDARD

Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  The Court draws all reasonable inferences in favor of the party opposing summary judgment.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the moving party bears the burden of proof on the relevant issue at trial, it can meet its summary judgment burden only "by presenting *affirmative* evidence showing the absence of a genuine issue of material fact — that is, facts that would entitle it to a directed verdict if not controverted at trial." *Emery v. Talladega Coll.*, 169 F. Supp. 3d 1271, 1280–81 (N.D. Ala. 2016) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).  With that showing made, the moving party "is entitled to summary judgment unless the non-moving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Fitzpatrick*, 2 F.3d at 1115 (alterations adopted; quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc)).

At summary judgement, courts may consider only evidence reducible to an admissible form at trial.  *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) (citation omitted). "Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citation omitted).  Indeed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial.  *Id.* (alteration added; citations omitted).

## III.  DISCUSSION

Defendant argues Plaintiff is clearly using the Property as a religious institution in violation of the City Code, which forecloses Plaintiff's claims under 28 U.S.C. section 1983 and compels summary judgment in favor of Defendant with respect to Plaintiff's claims and Defendant's counterclaim.  (*See generally* Def.'s Mot.).  Defendant adds that even assuming actionable conduct, "there is no *Monell* liability [against the City] as a matter of law[,]" and summary

judgment is appropriate on that basis alone.  (*Id.* 21 (alterations added; citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) (establishing framework for attributing liability to local governments under 28 U.S.C. section 1983))).  Plaintiff contends that the undisputed facts show it has met all the elements of its retaliation claim under the First Amendment and *Monell* liability is proper.  (*See generally* Pl.'s Mot.).  Notwithstanding the Court's determination of those issues, Plaintiff requests at least partial summary judgment on specific elements of *Monell* liability and seven of Defendant's affirmative defenses.  (*See id.* 21 & 21 n.10).

   The Court grants partial summary judgment in favor of Defendant with respect to Plaintiff's Fourteenth Amendment claim and partial summary judgment in favor of Plaintiff with respect to an element of *Monell* liability and two of Defendant's affirmative defenses.  But given the genuine dispute over questions of material fact on all other issues, the Court denies summary judgment on any other issues and claims.

### A.  Defendant's Counterclaim

   The Court first considers Defendant's request for summary judgment on its counterclaim, which seeks a declaration that Plaintiff is using the Property as a religious institution in violation of the City Code.  (*See* Def.'s Mot. 4–9; Am. Answer 32).  Defendant argues that from a plain interpretation of the City Code, Plaintiff "has been using and continues to use the Property as a religious institution in violation of the zoning laws[.]"  (Def.'s Mot. 3).

   The City Code's definition of a religious institution has four distinctive elements: a "[(1)] use where [(2)] an establishment, organization or association [(3)] conducts religious prayer or activity [(4)] that is open to members and/or the general public[.]"  Miami Beach, FL, Code § 114-1 (alterations added).  These elements are followed by an exception: "[a] group privately assembling

for worship, prayer or religious service in a private home or dwelling in which at least one member of the group resides, is not a religious institution[.]" *Id.* (alterations added).

Municipal ordinances, like all statutes, are subject to traditional rules of statutory construction. *See Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1206 n.14 (11th Cir. 2003) (citations omitted). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979) (citation omitted); *see also* Miami Beach, FL, Code § 114-2 ("Words and terms not defined in section 114-1 shall be interpreted in accord with their normal dictionary meaning and customary usage."). Nevertheless, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *U.S. v. Crape*, 603 F.3d 1237, 1243 (11th Cir. 2010) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). And courts should generally "avoid statutory interpretations that produce unreasonable or absurd results." *Silebi De Donado v. Swacina*, 486 F. Supp. 2d 1360, 1364 (S.D. Fla. 2007) (citing *U.S. v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940)).

Under Defendant's interpretation of the ordinance, Plaintiff is "by definition" a religious institution. (Def.'s Mot. 4). Defendant points out that the common meaning of "establishment" is a "business organization or place of business," and an "organization" or "association" refers to "a group of people working for a common purpose." (*Id.* 4–5).[2] According to Defendant, Plaintiff is an "establishment, organization or association" because it is a corporation organized for the

---

[2] *See also Establishment*, Merriam-Webster (last visited Apr. 28, 2023), https://www.merriam-webster.com/dictionary/establishment ("a place of business or residence with its furnishings and staff; a public or private institution"); *Organization*, Merriam-Webster (last visited Apr. 28, 2023), https://www.merriam-webster.com/dictionary/organization ("association, society; an administrative and functional structure (such as a business or a political party)"); *Association*, Merriam-Webster (last visited Apr. 28, 2023), https://www.merriam-webster.com/dictionary/association ("an organization of persons having a common interest").

principal purpose of "synagogue communal house of worship[,]" and because Plaintiff consists of "a group of people . . . who join together at the Property for the purpose of conducting prayer and other religious activity." (*Id.* 5 (alterations added)). Defendant argues that because Plaintiff meets these elements, Plaintiff cannot avail itself of the private prayer exception, which is "reserved for . . . a group privately assembling in a private home in which prayer activity is *not* conducted by an establishment, organization, or association." (*Id.* 8 (alteration added)). Further, Defendant states that Plaintiff is using the Property as a religious institution because the record "amply demonstrates" that Plaintiff conducts "religious prayer or activity" on the Property and this activity "is either open to members of the Kerestir congregation or group if not the public as a whole." (*Id.* 5–6).

"Courts must generally defer to a municipality's own interpretation of an ordinance, but only if its interpretation is based on a permissible construction." *Miami Metro Media, LLC v. City of Miami Gardens*, No. 09-20201-Civ, 2010 WL 2634432, at *4 (S.D. Fla. June 30, 2010) (citing *Southlake Prop. Assocs., Ltd. v. City of Morrow, Ga.*, 112 F.3d 1114, 1119 (11th Cir. 1997)). Defendant's interpretation here is not "permissible," and so the Court need not defer to it.

First, Defendant's textual analysis is incomplete. The private prayer provision states that "[a] group" may fall under the exception so long as it is engaged in private prayer and a member of the group lives in the home. Miami Beach, FL, Code § 114-1 (alteration added). The word "group" means "a number of individuals assembled together or having some unifying relationship[,]" *Group*, Merriam-Webster (last visited Apr. 28, 2023), https://www.merriam-webster.com/dictionary/group (alteration added), which is decidedly broader than a "business organization or place of business" or "a group of people working for a common purpose" (Def.'s Mot. 4–5). Following the plain meaning of these words, the term "group" includes

"establishment[s], organization[s] or association[s]" — each of which is a more specific type of group — and such groups may fall under the exception to the Code so long as they meet the exception's other requirements.  Miami Beach, FL, Code § 114-1.  Moreover, because the words "establishment, organization or association" have a more specific meaning than "group," such an interpretation does not result in surplusage that renders those three words meaningless, as Defendant suggests.  (*See* Def.'s Mot. 8).[3]

Second, Defendant's interpretation produces absurd results.  Following Defendant's logic, any group of people organized for a common purpose that conducts religious activity with members of the group is acting as a religious institution and cannot avail itself of the private prayer exception.  (*See id.* 4–8; Def.'s Resp. 6–7).  Under this interpretation, for example, a book club — which is a group of people organized for the common purpose of reading and discussing books[4] and therefore an "establishment, organization or association" — would be prohibited from beginning a meeting in a residential home of one of its members with a prayer.

Such a broad prohibition on religious activity is likely unconstitutional.  *See generally Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (explaining that a law whose object is to restrict religious activity is invalid unless justified by a compelling purpose and narrowly tailored to advance that interest); *cf. Tandon v. Newsom*, 141 S. Ct. 1294, 1296–98 (2021) (granting preliminary injunction against enforcement of COVID-based capacity restrictions on at-home religious exercise).  Indeed, even the City appears to acknowledge the Code cannot be read

---

[3] The Court does not address Plaintiff's statutory argument that a religious institution must be one of a public character open to the public (*see* Pl.'s Mot. 6–9; Pl.'s Resp. 2–3), because Plaintiff bases its claims on the theory that it has engaged in private prayer under the exception (*see* Am. Compl. ¶¶ 17, 39–41, 84).  It does not assert that it is not an "establishment, organization or association" under the City Code.

[4] *See Book Club*, Merriam-Webster (last visited Apr. 28, 2023), https://www.merriam-webster.com/dictionary/book%20club ("a group of people who meet regularly to discuss books they are reading").

so broadly; the City's Planning Director, in his deposition, declined to say that the City Code outright prohibits book clubs. (*See* Mooney Dep. 37:24–39:18 (stating that he would need to consider "information pertaining to the club or organization" to decide, based on his understanding, whether a particular book club was a "formal organization" under the Code)).

Defendant's interpretation is impermissible. An "establishment, organization or association" could indeed avail itself of the private prayer exception, and resolution of Defendant's counterclaim depends on whether Plaintiff has in fact done so. Accordingly, the plain text of the City's zoning ordinance does not support the grant of summary judgment in favor of Defendant on its counterclaim.

### B.  Plaintiff's Section 1983 Claims

Section 1983 "provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (citing 28 U.S.C. § 1983; footnote call number omitted). There is no dispute that Defendant's actions were undertaken under color of state law. (*See generally* Def.'s Mot; Pl.'s Mot.). The two issues are whether Defendant violated Plaintiff's constitutional rights and whether it is liable for the acts of its employees as a matter of law. (*See generally* Def.'s Mot; Pl.'s Mot.).

The Court addresses the parties' arguments with respect to Plaintiff's First Amendment claims only. Plaintiff also asserts section 1983 claims under the Fourteenth Amendment in its Amended Complaint (*see* Am. Compl. ¶¶ 102, 106–07 (stating claims for violation of substantive due process and equal protection)) but abandons these claims in response to Defendant's Motion (*see* Def.'s Mot. 10–13; Pl.'s Resp. 10 n.9 (stating Plaintiff "is not pursuing a substantive due

process or a [sic] equal protection claim")).  The Court therefore grants summary judgment in favor of Defendant with respect to Plaintiff's Fourteenth Amendment claims.  *See Wallace v. Se. Transfer & Storage Co., Inc.*, No. 1:19-cv-1117, 2021 WL 1061725, at \*3 n.5 (N.D. Ga. Mar. 18, 2021) ("A party has an obligation to respond to an argument raised in a motion for summary judgment, and issues not briefed are deemed abandoned." (collecting cases)).

### 1.  First Amendment

To establish a First Amendment retaliation claim, a plaintiff must show (1) it engaged in constitutionally protected activity, (2) the defendant took adverse action that would deter a person of ordinary firmness from the exercise of First Amendment rights, and (3) there is a causal connection between the defendant's adverse action and the plaintiff's conduct.  *See Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

Private religious speech, such as that at issue in this case, is protected under the First Amendment.  *See Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995) ("Our precedent establishes that private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression." (citations omitted)).  But the "[g]overnment may regulate place and manner of religious expression as long as there is no content classification and so long as the regulation is reasonable."  *Grosz*, 721 F.2d at 740 (alteration added; citation omitted).  Because Plaintiff does not contest the validity of the City Code regulating the operation of religious institutions in the RS-4 residential district (*see* Oct. 6, 2022 Order 23–29 (dismissing Count III of the Amended Complaint); *see also* Am. Compl. ¶¶ 17, 39–41, 84 (alleging it has engaged in private prayer in compliance with the City Code)), whether Plaintiff can succeed on its First Amendment retaliation claim turns on whether it can establish that it has engaged in protected speech in compliance with the City Code.

Defendant argues that from both a plain interpretation of the City Code and a review of the facts, Plaintiff "is running a religious institution in violation of the City's zoning laws" and therefore not engaging in protected activity under the first prong of a First Amendment retaliation claim. (Def.'s Mot. 9). Defendant also asserts that because its code enforcement activity was "legitimate[,]" Plaintiff cannot establish the second and third elements. (*Id.* 10 (alteration added); *see id.* 10–16). Plaintiff insists that the undisputed facts show it meets all three elements of its claim. (*See* Pl.'s Mot. 5–15; Pl.'s Resp. 11–18).

As discussed, the Court disagrees with Defendant that the text of the City Code precludes Plaintiff's claim as a matter of law. Moreover, there are clearly genuine disputes of material fact over whether Plaintiff has in fact complied with the City Code, whether Defendant's conduct constitutes adverse action to deter Plaintiff from engaging in protected speech, and whether there is a causal connection between Defendant's conduct and Plaintiff's exercise of its First Amendment rights. *See Bennett*, 423 F.3d at 1250 (listing the elements of a First Amendment claim).

First, the parties dispute whether the facts — based on the case's extensive record — show Plaintiff is operating a synagogue at the Property or merely engaging in private prayer. (*Compare* Hoffman Expert Report 9–10 (explaining that "Orthodox/Hasidic synagogues have certain characteristics which . . . appear to be shared by the [P]roperty" (alterations added)) *with* Chernov Rebuttal Report (outlining factors that suggest Plaintiff is not operating a synagogue)). They also dispute whether religious activity on the Property is open to the "members and/or the general public" of a religious institution or just friends and family of individuals residing on the Property. Miami Beach, FL, Code § 114-1; (*Compare* Brechner Decl. ¶¶ 8–10 *and* Reich Dep. 134:8–135:9 *and* Goodfriend Dep. 103:22–105:9 *with* Mooney Decl. ¶ 32 *and* Reich Dep. 113:16–23).

Second, because the parties dispute whether a violation occurred at all, they necessarily dispute whether the extent and nature of Defendant's code enforcement procedures would deter a person of ordinary firmness from the exercise of his or her First Amendment rights.  (*Compare* Pl.'s Mot. 13–15 *with* Def.'s Resp. 9–10).  And third, both parties offer divergent factual accounts of the motivation for the City's code enforcement.  (*Compare* Def.'s Mot. 15–21 *with* Pl.'s Resp. 13–18); *see also Holley v. Seminole Cty. Sch. Dist.*, 755 F.2d 1492, 1505 (11th Cir. 1985) (observing that "issues of motivation are generally improper for disposition on summary judgment because without a searching inquiry into . . . motives, those intent on punishing the exercise of constitutional rights could easily mask their behavior behind a complex web of *post hoc* rationalizations" (alteration in original; quotation marks and citation omitted)).  For example, Defendant claims that its enforcement was legitimate and based on an objective lack of compliance with the City Code.  (*See* Def.'s SOF ¶¶ 46–66).  By contrast, Plaintiff argues the City's enforcement was motivated by discriminatory intent, pointing to the lack of enforcement against a nearby yoga studio.  (*See* Pl.'s SOF 12 n.7; Pl.'s Reply 11 (noting that Defendant did not pursue enforcement action against the yoga studio until Barry Brechner complained)).

Because resolution of Plaintiff's First Amendment claim requires factfinding and credibility determinations that must be left to a jury, summary judgment in favor of either party is inappropriate.  *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations[.]" (alteration added; citations omitted)).

### 2. *Monell* Liability

Defendant argues that even if Plaintiff establishes a violation of its First Amendment rights, the City cannot be held liable under *Monell* as a matter of law. (*See* Def.'s Mot. 21–24). Plaintiff disagrees, arguing that the undisputed facts show *Monell* liability exists. (*See* Pl.'s Resp. 18–21).

A municipality may be liable under section 1983 when execution of its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" at issue. *Monell*, 436 U.S. at 694. Relevant here, a policy or custom may be established by "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quotation marks and citation omitted). Alternatively, a municipality may be liable "for a single illegal act committed by one of its officers . . . . when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter." *Scala v. City of Winter Park*, 116 F.3d 1396, 1397 (11th Cir. 1997) (alteration added).

Plaintiff first asserts the existence of a widespread policy or custom of harassment toward Plaintiff. (*See* Pl.'s Mot. 16–18). Defendant asserts that "Plaintiff cannot establish that the City has a widespread practice or custom of religious discrimination . . . [because] there is no record evidence of any such purported unconstitutional discrimination against anyone else." (Def.'s Mot. 22 (alterations added; citations omitted)). Defendant is incorrect. "[R]epeated, constitutional failures with respect to one individual as well as a culture that permitted and condoned violations of policies may be sufficient to withstand summary judgment on a *Monell* claim." *Lozman v. City*

*of Riviera Beach*, 39 F. Supp. 3d 1392, 1408 (S.D. Fla. 2014) (alteration added; quotation marks and citations omitted).

Nonetheless, there is a genuine dispute of material fact over whether Plaintiff can establish such repeated, constitutional failures along with a culture that condoned them.  (*Compare* Pl.'s Mot. 15–18; Pl.'s Resp. 18–21 *with* Def.'s Mot. 16–23; Def.'s Resp. 11–13).  On the one hand, Plaintiff implicates the actions of no fewer than 15 officials, pointing to emails and evidence that Plaintiff believes show a coordinated effort to target the Property through any means necessary. (*See* Pl.'s Resp. 19–20; Pl.'s SOF ¶¶ 16–62).  On the other hand, Defendant maintains that its code enforcement actions were "isolated, legitimate enforcement actions arising from neighbor-driven complaints" and thus do not constitute a policy adverse to Plaintiff.  (Def.'s Resp. 18 (alteration added); *see also* Def.'s SOF ¶¶ 46–66).  As discussed, the extent and nature of Defendant's code enforcement requires fact and credibility determinations conducted by the trier of fact — the jury.

Alternatively, Plaintiff insists that regardless of whether the undisputed facts show a widespread policy or custom, the City is still liable for the acts of its final policymakers.  (*See* Pl.'s Mot. 18–21).  Defendant disagrees, arguing Plaintiff has failed to identify any final policymakers. (*See* Def.'s Mot. 23–24; Def.'s Resp. 19–21; Def.'s Reply 11).

Whether an official possesses "final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  Final policymakers must be "responsible for establishing final policy with respect to the subject matter in question" and must have taken "a deliberate choice to follow a course of action . . . from among various alternatives[.]"  *Id.* (alterations added).  Further, the Eleventh Circuit has "interpreted *Monell*'s policy or custom requirement to preclude [section] 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the

power to review the exercise of that discretion[.]"  *Scala*, 116 F.3d at 1399 (alterations added; citation omitted).  Therefore, "a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review."  *Id.* at 1401 (citations omitted).

According to Plaintiff, at least six individuals directed the alleged harassment in their capacity as final policymakers: Planning Director Thomas Mooney, Assistant City Manager Eric Carpenter, Code Compliance Director Hernan Cardeno, Chief Deputy City Attorney Alek Boksner, Deputy Assistant City Attorney Steven Rothstein, and the City's Special Magistrate. (*See* Pl.'s Mot. 18; Pl.'s Resp. 19).  Plaintiff does not provide sufficient information for the Court to determine the scope of authority of the first five actors; rather, it merely insists that the officials "were acting in their final policymaking capacities".  (Pl.'s Mot. 18); *see also Maschmeier v. Scott*, 269 F. App'x 941, 944 n.4 (11th Cir. 2008) ("The final policymaker element must be proven as part of the plaintiff's case; it is not an affirmative defense to municipal liability under [section] 1983." (alteration added; citation omitted)).  Plaintiff says nothing, for example, about what particular subject matter these actors purportedly have final authority over or whether their decisions are subject to administrative review.  (*See* Pl.'s Mot. 18; Pl.'s Resp. 19).

Defendant correctly points out that Plaintiff has not met its burden at the summary-judgment stage to show these five officials have "authority or responsibility to *establish* City policy" as final policymakers.  (Def.'s Resp. 19–20 (emphasis in original)).  But Defendant also provides no information suggesting the five officials are *not* final policymakers while also requesting summary judgment in its favor on the issue.  (*See* Def.'s Mot. 24 (stating simply that "[n]one of the [] actors involved in the Code enforcement actions . . . possess[] final authority so as to establish municipal policy" (alterations added)); Def.'s Reply 11).  The Court cannot grant

summary judgment based on "mere allegations" or conclusory statements by counsel; rather, the party seeking summary judgment on an issue must advance "significant probative evidence" in support of its position. *Anderson*, 477 U.S. at 248–49 (collecting cases); *see also Bowden v. Wal-Mart Stores*, *Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) (noting "the opinions, allegations, and conclusory statements of counsel do not substitute for evidence" (citation omitted)). Neither party has met that burden here, and summary judgment as to whether the first five officials identified by Plaintiff are final policymakers is not appropriate.

That leaves the sixth official identified by Plaintiff: the City's Special Magistrate. Plaintiff argues that the Special Magistrate is a final policymaker because, under the City's authority to establish administrative boards, he is "hired and paid for . . . by the City as its final authority or ultimate repository in those matters which the City chooses, but is not required, to put before him[.]" (Pl.'s Mot. 19 (alterations added)). Moreover, he issues "final administrative order[s]" that, while reviewable in state court on a limited basis, are not subject to meaningful administrative review by other City officials. (*Id.* 20 (alteration added; quotation marks and citations omitted)).

 The Court already decided at the motion-to-dismiss stage that Plaintiff sufficiently alleged the Special Magistrate was a plausible final policymaker. (*See* Oct. 6, 2023 Order 20–21). Undeterred, Defendant renews its prior arguments that the Special Magistrate cannot be a final policymaker because he performs a quasi-judicial function, and his decisions are subject to review by the state court. (*See* Def.'s Mot. 23–24). Defendant's renewed arguments do not preclude entry of summary judgment on this issue.

First, the Court is not persuaded that an official who performs a quasi-judicial function cannot be a final policymaker. Defendant begins by citing *Boston v. Lafayette County* for this proposition (*see id.* 24); in that case, the court found a county's Special Master was not a final

policymaker based on the Fifth Circuit's "judicial function doctrine[,]" which states that "[w]hen performing a judicial function by interpreting a state statute — which limits his discretion and is not merely a standardless grant of authority — a judge acts to *implement* state policy rather than *create* policy for the local government of which he is a part[,]" 743 F. Supp. 462, 470 (N.D. Miss. 1990) (alterations added; emphasis in original; citing *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980); *Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir. 1985); other citations omitted).

The doctrine in *Boston*, however, is primarily focused on distinguishing which duties of a local judicial official can be attributed to the local government as opposed to the state government. *See Familias Unidas*, 619 F.2d at 404; *Carbalan*, 760 F.2d at 665. This distinction matters because state governments are immune from suit under section 1983; *Monell* liability does not attach when the judicial official interprets a state statute and therefore speaks for the state government. *See Familias Unidas*, 619 F.2d at 405. That is not the situation here, where the Special Magistrate interprets and sets conditions in accordance with a local ordinance rather than a state statute. (*See generally* Order on NOV (interpreting City Code)).

Defendant then cites *Parker v. Town of Palm Beach*, where the court found that because the code enforcement board at issue was an adjudicatory body, it could not be considered a final policymaker. (*See* Def.'s Resp. 21 (citing *Parker v. Town of Palm Beach*, No. 17-cv-80176, 2017 WL 11537901, at *3 (S.D. Fla. Aug. 16, 2017))). But the court in *Parker* cited no authority — and the Court could find none — for this proposition. *See* 2017 WL 11537901, at *3. And its conclusion is inconsistent with the suggestion in *Praprotnik* that a civil service commission, which decided appeals of the city's adverse appointing decisions and is thus presumably an adjudicatory

CASE NO. 22-21213-CIV-ALTONAGA/Torres

body, was the final policymaker.  *See* 485 U.S. at 127.  Therefore, the Court finds the reasoning in *Parker* unpersuasive.

Second, Defendant's insistence that the availability of state court review precludes finding that the Special Magistrate is a final policymaker is irreconcilable with *Monell*.  The Supreme Court in *Monell* confirmed that Congress intended for municipalities and local governments to be liable under section 1983 and set out a framework to determine which actions could be properly attributed to such parties.  *See* 436 U.S. at 690 (explaining that a local government can be sued if it "executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by *that body's officers*." (emphasis added)).  That is, the point is to determine what acts *the City* is responsible for.  *See id.*; *see also Praprotnik*, 485 U.S. at 124–27 (explaining considerations relevant to determining what official or body "has the responsibility for making law or setting policy in any given area of [a] local government's business." (alteration added; footnote call number omitted)).  Review by the state, which is a different government entity, is irrelevant to that analysis. *See Holloman ex. rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004) ("A member or employee of a governing body is a final policy maker only if his decisions have legal effect without further action by the governing body . . . and if the governing body lacks the power to reverse the member or employee's decision[.]" (alterations added; citations omitted)).

In sum, the Special Magistrate has authority and discretion to interpret and apply conditions for compliance with a local ordinance and his actions are not subject to meaningful administrative review by other City officials.  (*See* Pl.'s Mot. 19–21 (citing Fla. Stat. §§ 162.02–03 (authorizing the creation of administrative boards); Miami Beach, FL, Code § 30-73 (defining powers of the Special Magistrate, including "[i]ssu[ing] orders having the force of law commanding whatever steps are necessary to bring a violation into compliance" (alterations added)))); *see also* Miami

Beach, FL, Code § 30-77 (authorizing circuit court appeals of Special Magistrate's final administrative orders).  Plaintiff has thus met its burden to demonstrate that the Special Magistrate is a final policymaker whose actions may subject the City to liability under section 1983 and the Court grants summary judgment in favor of Plaintiff on that narrow issue.  *See Maschmeier*, 269 F. App'x at 944 n.4; *Pembaur*, 475 U.S. at 483.  But whether the Special Magistrate's order finding that Plaintiff's use of the Property was not a "compatible accessory use of a residential property" constituted a violation of Plaintiff's First Amendment rights is a question of fact most appropriately submitted to the jury.  (Order on NOV 3); *see Mize*, 93 F.3d at 742.

## C.  Defendant's Affirmative Defenses

Plaintiff requests partial summary judgment with respect to Defendant's affirmative defenses.[5]  (*See* Pl.'s Mot. 21 n.10); *see Tingley Sys. v. Healthlink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007) ("Partial summary judgment may properly be granted on affirmative defenses." (citation omitted)).

Plaintiff challenges Defendant's Fourth and Fifth Affirmative Defenses raising prosecutorial and judicial immunity.  (*See* Pl.'s Mot. 22; Am. Answer 12).  Defendant responds to this issue only in passing.  (*See* Def.'s Resp. 10 n.7 ("[T]here can be no adverse action based on the prosecution or decision on the violation because those actions are subject to prosecutorial and judicial immunity." (alteration added; citation omitted)).  In any case, because Plaintiff is suing the City and implicates its employees only in their official rather than individual capacities,

---

[5] The Court previously rejected Defendant's First Affirmative Defense, asserting Plaintiff's claims are unripe or moot, and its Eighth Affirmative Defense, stating Plaintiff's claim for injunctive relief is barred under principles of separation of powers.  (*See* Oct. 6, 2022 Order 10–16 (rejecting Defendant's ripeness and mootness challenges and explaining that federal courts have the power to grant injunctive relief from state regulation when such regulation conflicts with federal statutes or the Constitution)).  The Court sees no reason to address these defenses once more.

summary judgment in favor of Plaintiff is appropriate as to these defenses. *Cf. Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.").

Lastly, Defendant's Second Affirmative Defense, raising the doctrine of unclean hands; its Third Affirmative Defense, claiming the City cannot be liable under a theory of *respondeat superior*; and its Sixth Affirmative Defense, denying any underlying constitutional violation, all implicate issues already discussed: whether Plaintiff's conduct complies with the City Code, whether *Monell* liability is proper, and whether Plaintiff has met all the elements of its First Amendment claim. (*See* Am. Answer 12–13). Consequently, summary judgment is inappropriate.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff Congregation 3401 Prairie Bais Yeshaya D'Kerestir, Inc.'s Motion for Summary Judgment **[ECF No. 127]** is **GRANTED in part and DENIED in part**.  The Court finds that the City's Special Magistrate is a final policymaker and grants summary judgment in favor of Plaintiff with respect to Defendant's Fourth and Fifth Affirmative Defenses.  Defendant City of Miami Beach's Motion for Summary Judgment **[ECF No. 134]** is **GRANTED in part and DENIED in part**.  The Court grants summary judgment in favor of Defendant with respect to Plaintiff's Fourteenth Amendment claim.  Summary judgment is denied as to all other issues.

CASE NO. 22-21213-CIV-ALTONAGA/Torres

**DONE AND ORDERED** in Miami, Florida, this 10th day of May, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record